Defendant Jeanette Hudson appeals a judgment of the Court of Common Pleas of Coshocton County, Ohio, convicting and sentencing her for aggravated arson in violation of R.C.2909.02, after a jury found her guilty. Appellant assigns three errors to the trial court:
ASSIGNMENTS OF ERROR
 FIRST ASSIGNMENT OF ERROR
 TRIAL COURT ERRED IN PERMITTING TESTIMONY OF WITNESS BEYOND EXPERTISE, IN VIOLATION OF OHIO EVID. R. 702, DENYING APPELLANT FAIR TRIAL GUARANTEED UNDER SECTION 5, ARTICLE 1 OF THE OHIO CONSTITUTION, AND THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION.
 SECOND ASSIGNMENT OF ERROR
 APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS OF THE FEDERAL CONSTITUTION, AND SECTION 5 AND 10, ARTICLE I OF THE OHIO CONSTITUTION.
 THIRD ASSIGNMENT OF ERROR
 ADMISSION OF NON-TESTIFYING CO-DEFENDANT'S STATEMENT VIOLATED APPELLANT'S RIGHT TO CONFRONTATION GUARANTEED UNDER SIXTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
At trial, the State maintained appellant and her co-defendant Donald Cain, who is not a party to this appeal, set fire to their residence in Coshocton County, Ohio. The State presented evidence they purchased the home on May 20, 1997, on land contract. They purchased the home for $72,000 and purchased insurance on the home for $100,000 on the structure and $50,000 on the contents. However, the policy language provided in the event of a loss the policy covered the actual value of the home and belongings, not the face value of the policy. The State also presented evidence appellant and Cain experienced financial problems and had difficulty meeting their expenses.
On the morning of the fire, appellant put her children on a school bus. After the bus left, Cain, appellant, and her youngest child went to the home of one Scott Harbold. Cain and Harbold went hunting and appellant went to work. Near the time Cain and appellant left their home, various witnesses observed smoke coming from the home, and a few minutes later, flames from the home. Despite efforts by the fire department, the structure collapsed into the basement. A witness testified the structure collapsed approximately fifteen minutes after the first flames erupted from the building.
Fire Inspector Jeff Corder arrived on the afternoon of the fire while the fire department was still present at the scene. He obtained a consent to search from the appellant and examined the scene. Corder took numerous photographs. Based upon his initial observations of the scene, Corder contacted the State Fire Marshall's office. The investigator who examined the remains of the structure testified it was an accelerated fire which was intentionally set, although the State conceded tests done on specimens taken from the site did not identify the presence of any accelerant.
In defense, appellant presented evidence her financial problems were not as serious as the State argued. Appellant also challenged the expert opinion offered by the State that the fire showed signs of liquid accelerant intentionally poured on the structure by pointing out the State was unable to detect any accelerant in the structure by testing.
 I
In her first assignment of error, appellant challenges the trial court's admission of certain expert opinions given on direct examination in the State's case in chief. Appellant alleges although the State Arson Investigator Joseph Boban, was qualified as an expert on some issues, he was not qualified to testify about the gas chromatography tests performed on the remains of the residence. Appellant asks us to find Boban possessed no expertise as to the process, and hence the admission of the unqualified testimony denied appellant her right to a fair trial as guaranteed by the Ohio and Federal Constitutions.
Ohio Evid. R. 702 provides a witness qualifies as an expert witness if the witness meets three requirements:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
The State Arson Investigator, Joseph Boben, made a visual inspection of the fire scene and it was his opinion that liquid accelerant was poured throughout the floor of appellant's home. Boben collected three evidence samples from the scene, two wood samples from the home and a gasoline can found in the back yard. The samples were sent to Dr. Christa Rajendram, who performed a gas chromatograph analysis. The test result showed no evidence of an accelerant on the submitted wood samples, and the State did not call Dr. Rajendram in its case in chief.
Boben testified on direct it was his opinion the fire originated on the liquid accelerant poured on the first floor. During direct examination, and over objection by defense counsel, Boben testified the Fire Marshall's office had a lab available to it where investigators can submit samples for identification. The State asked Boben if it was unusual for a lab to return a negative finding even though the investigator believed an accelerant had been used. Over objection, defense counsel Boben testified it frequently happens. Boben testified about sixty percent of the time a sample is submitted in a suspicious fire, the lab detects liquid accelerant. Boben elaborated that this may be caused by the accelerant being completely burned, or a sample being taken from the wrong area.
Upon direct, Boben explained why he believed the fire was intentionally set, based upon his observation of the scene and the burn patterns he observed.
Appellant argues the trial court erred in admitting Boben's testimony regarding the accuracy of the chromatograph test and false negative results. The court found Boben was speaking in general terms. Appellant argues Boben did not conduct the test and had no expertise regarding its operation or reliability. Appellant cites us to State v. Spencer (June 3, 1982), Cuyahoga Appellate No. 44007, unreported in support. In Spencer, supra,
the State presented the evidence of a fireman who testified he removed samples and submitted them for testing. The State introduced the samples and the court admitted them into evidence even though the fireman testified he was unfamiliar with the test and could not explain how it was performed. The Court of Appeals for Cuyahoga County found the admission of the samples was error.
We find Spencer clearly distinguishable from the case at bar. Although the State in this case did not present foundational evidence regarding the test, the defense did so, calling Dr. Rajendram on direct. Dr. Rajendram testified she personally conducted a chromatograph test on the submitted samples and if there has been gasoline present on the sample, the test would have been positive.
In Spencer, the State sought to introduce evidence of the results of the test without laying a proper foundation. Here, it was the defense, not the State, which wanted to inform the jury that the test was negative. The State did not introduce a proper foundation for a discussion of the chromatograph test. However, we find this harmless error. Boben's testimony challenging the accuracy of the test is admissible on rebuttal to the defense's evidence that the test was negative. Boben's testimony in this regard was premature, but we also find because the defense introduced the test with a proper foundation from the doctor who performed it given the facts and circumstances of this case, failure to present the evidence in proper sequence was not prejudicial error.
Regarding appellant's argument, Boben was unqualified to discuss the test, we find an expert may be qualified to discuss the results of a test even if the witness is not qualified to perform the test. Boben was clearly qualified to testify regarding arson in general and about his investigation in this case, including the results of the test.
Finally, appellant argues Boben's testimony violated Evid. R. 703 because his opinion the tests yield forty percent false negatives was neither personally observed by him nor admitted into evidence. We agree with the trial court Boben's testimony was both within his area of expertise and was a general statement, and thus, we find no error therein.
The first assignment of error is overruled.
 II
In her second assignment of error, appellant asserts her conviction is against the manifest weight of the evidence. The State's evidence consisted of four factors:
1. The arson investigator's testimony concerning the presence of accelerant.
2. Evidence appellant and her fiancee were experiencing financial difficulty.
3. Appellant's alleged confession made from the jail to Harbold, the person with whom Cain spent the morning of the fire.
Appellant asserts the arson investigators totally ignored Dr. Rajendram's report in testifying the fire was intentionally set. Appellant also maintains the State exaggerated the financial difficulties she was experiencing at the time, and points out the insurance policy on the property was for cash value of the loss, not the full face limits of the policy.
Finally, appellant asserts the evidence of her alleged confession was Harbold's video taped testimony that appellant had phoned him from the jail and admitted setting the fire. Appellant concludes the State's evidence was weak and her conviction was against the manifest weight of the evidence.
Our standard of reviewing a claim a jury's verdict is against the manifest weight of the evidence is to review the evidence presented and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice,State v. Thompkins (1977), 78 Ohio St.3d 380. A reviewing court will not reverse a jury's verdict where there was sufficient competent and credible evidence upon which the trier of fact could reasonably conclude all the elements of the offense had been proven, see State v. Eley (1978), 56 Ohio St.2d 169. The jury is best able to weigh the evidence and determine the credibility of the witnesses, see State v. DeHass (1967),10 Ohio St.2d 230.
Although appellant mounted an aggressive defense, nevertheless there was sufficient evidence presented by the State to warrant appellant's conviction. The jury viewed the evidence and the witnesses, and from them determined the facts of the case. Based upon our review of the record, this court cannot say the jury was manifestly wrong.
The second assignment of error is overruled.
 III
In her third assignment of error, appellant challenges the admission of the statement made by her co-defendant, Donald Cain. Donald Cain was not called by the State at trial, but the State presented his statement that he and appellant had been experiencing severe financial difficulties. Specifically, the court permitted Jeffrey Corder, a fire inspector for the City of Coshocton and a member of the Sheriff's Department Auxiliary to testify regarding his summary of his interview of Donald Cain. Corder testified Cain told him Cain and appellant were behind in some bills, although they could always meet their mortgage payment. They had applied for several loans against the house, but were turned down. Cain also allegedly told Corder he had recently received a letter from his case worker at the Department of Human Services which informed him there would be no benefits or foods stamps for the month of December. Finally, Corder testified Cain was only occasionally employed, and was unable to work steady.
Before the court admitted the statement, it conducted an extensive discussion with the prosecutor, with Donald Cain's defense attorney, and appellant's defense counsel. The court asked the prosecutor to summarize what the State expected Corder to say if he were permitted to testify, and the parties discussed numerous issues regarding the admission of the evidence. Eventually, the court ruled the evidence admitted for a limited purpose, and brought the jury back. Prior to permitting the prosecutor to call Corder, the court instructed the jury ". . . at this point I would instruct you that any of the information presented through the summary of the statements of Donald Cain on those two dates may not be used by you for any purpose with respect to establishing any of the elements of the offense charged against Jeanette Hudson. This evidence from the so-called Cain statements is admissible only for in your consideration of the evidence against defendant, Donald Cain and may not be used by you for any purpose in your evaluation of the State's case against Jeanette Hudson. . . ." Tr. of proceedings, at 267.
Appellant argues admission of this evidence violated the principles enunciated by the United States Supreme Court inBruton v. United States (1968), 391 U.S. 123. Bruton, supra,
held the admission of a co-defendant's confession that implicates the defendant at a joint trial constitutes prejudicial error even if the court instructs the jury the confession is only admissible as against the co-defendant. Appellant argues while Cain's statement is not, strictly speaking, a confession, it was nevertheless evidence of the financial difficulty experienced not only by Cain, but also by Hudson. Thus, appellant urges the State could only present this evidence if Cain had taken the stand to testify and submitted to appellant's right of confrontation, see Richardson v. Marsh
(1987), 481 U.S. 200.
The record discloses this matter was carefully developed prior to trial, and resulted in the court's sustaining appellant's motion in limine to exclude Cain's statement. Prior to admitting Corder's testimony, the court discussed his judgment in limine with all parties. The court also conducted a dialogue regarding Bruton, supra. The court ruled the statements did not address Hudson and a curative instruction directing the jury regarding the limited use of this matter would be given. The court also noted although Cain was not testifying, Corder was, and there would be ample opportunity to cross examine Corder on the accuracy of the summary. The defense had the opportunity to persuade the jury the summary he made was not accurate. Counsel for Cain advised the court if the limiting instruction were given and certain portions were redacted, he had no objection to admission of the summary. Appellant's counsel, however, renewed his objection that the relationship between the co-defendants was such that it would be impossible to extract appellant's situation from a discussion of Cain's financial circumstances.
The State points out appellant's name did not come up in the testimony, that the court carefully instructed the jury regarding the proper use of the statement, and further, the testimony was cumulative. The State called Harbold to testify appellant and Cain owed money to him. Appellant herself, in her case in chief, presented witnesses to testify they gave her money to pay the bills, including the house payment, and to get the electrical service turned back on after it was shut off. Appellant presented these witnesses in the hope the jury would conclude her finances were not as bleak as the State attempted to paint them, but the State argues the jury could just have easily interpreted this evidence to demonstrate appellant was in severe financial difficulties and was forced to borrow money from her friends to pay her more urgent bills.
We have reviewed the record, and we find the court's decision to permit Corder to testify did not deny appellant her right to confrontation because Corder, the person who wrote the summary, was present and available for cross examination regarding his interpretation of Cain's statement. Further, we find the evidence was, at best, cumulative. The statement Corder referred to was not a confession, and in fact, Cain denied any arson occurred. Cain did not accuse appellant of any crime. Finally, we must presume the jury followed the court's carefully constructed limiting instruction.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin. P.J., Farmer, J., concur
Edwards, J., concurs separately.
-------------------
-------------------
 ------------------- JUDGES